603 So.2d 488 (1992)
Askari Abdullah MUHAMMAD, Appellant,
v.
STATE of Florida, Appellee.
No. 75055.
Supreme Court of Florida.
June 11, 1992.
Rehearing Denied September 17, 1992.
Larry Helm Spalding, Capital Collateral Representative, and Judith J. Dougherty, Asst. CCR, Office of Capital Collateral Representative, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Fariba N. Komeily, Asst. Atty. Gen., Miami, for appellee.
HARDING, Justice.
Askari Abdullah Muhammad, a prisoner under sentence of death, appeals the trial court's denial of his motion to vacate judgment and sentence filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution.
Muhammad was convicted of first-degree murder for fatally stabbing a prison guard. Muhammad's motion to proceed pro se was twice denied by two separate judges, who later recused themselves from the case. Muhammad's first trial ended in mistrial. When Muhammad renewed his request to proceed pro se, a third judge ruled that Muhammad could represent himself. The jury returned a guilty verdict. Muhammad waived his right to a jury recommendation in the penalty phase, and the trial judge sentenced him to death. On appeal, this Court affirmed both the judgment and the sentence. Muhammad v. State, 494 So.2d 969 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987). In February 1989, Muhammad sought collateral relief pursuant to Florida Rule of Criminal Procedure 3.850, which was summarily denied by the trial court. Muhammad now appeals the trial court's denial of his motion for postconviction relief.
Of the eighteen claims[1] presented in his 3.850 motion, Muhammad seeks review of the trial court's rejection of the following fifteen: 1) that summary denial was erroneous and the trial court erred in failing to either identify or attach the portion of the record that refutes each claim; 2) that Muhammad's rights were violated because no reliable transcript of the trial exists and critical records were not included in the record on direct appeal; 3) that Muhammad was denied effective assistance of counsel in violation of Faretta;[2] 4) that Muhammad *489 was denied due process and equal protection because the appointed mental health expert failed to conduct a professionally competent evaluation and this in turn caused counsel to render ineffective assistance; 5) that Muhammad was denied effective assistance of counsel by the court's order that defense counsel not present an insanity defense; 6) that Muhammad's rights were abrogated because he was forced to undergo criminal judicial proceedings although he was not legally competent; 7) that the death sentence was unreliable because Muhammad was not competent to waive his sentencing jury yet the penalty proceedings were not conducted before an advisory jury; 8) that Muhammad was denied his rights as a pro se defendant at both the guilt and penalty phases of the trial; 9) that state misconduct throughout the guilt and penalty phases denied Muhammad's right to a fundamentally fair and reliable capital trial and sentencing determination; 10) that the trial court's denial of Muhammad's motions for change of venue and for individual, sequestered voir dire deprived him of his right to a fair and impartial jury; 11) that Muhammad was indicted by a biased grand jury; 12) that the trial court erred in failing to consider Muhammad's mental deficiencies as nonstatutory mitigating circumstances and in considering nonstatutory aggravating factors; 13) that the trial court unconstitutionally shifted the burden of proof with regard to the appropriateness of a sentence of life imprisonment; 14) that the jury and judge improperly considered the victim's character and "victim impact" information; and 15) that the "heinous, atrocious, or cruel" aggravating circumstance was applied without articulation or application of a meaningful narrowing principle in violation of Maynard.[3]
We affirm the trial court's summary rejection of claims two through eight, claim nine with the exception of the Brady violation, and claims ten through fifteen. These claims are procedurally barred either because the issue was not preserved at trial, the issue was already raised and rejected on direct appeal, or the issue could have or should have been raised on direct appeal. Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack. Smith v. State, 445 So.2d 323, 325 (Fla. 1983), cert. denied, 467 U.S. 1220, 104 S.Ct. 2671, 81 L.Ed.2d 375 (1984).
Muhammad also urges that the trial court either should have granted an evidentiary hearing on his motion for postconviction relief or attached portions of the record that conclusively show he was not entitled to relief. However, rule 3.850 provides that "[i]f the motion and the files and records in the case conclusively show that the prisoner is entitled to no relief, the motion shall be denied without a hearing." Thus, summary denial was appropriate as to the claims which the trial court found to be procedurally barred.
However, we agree with Muhammad that summary denial was improper as to the State's alleged failure to disclose exculpatory employee statements in violation of Brady v. Maryland[4] (part of claim 9). Gorham v. State, 521 So.2d 1067 (Fla. 1988). In summarily denying this claim, the trial court stated that "this is an issue that should have been raised on direct appeal." However, some claims arising under Brady are proper in a rule 3.850 motion. Demps v. State, 416 So.2d 808 (Fla. 1982). In this case, Muhammad alleges that despite his repeated requests for discovery the State suppressed exculpatory statements of prison employees who witnessed the offense. He further alleges that the State insisted that it had no such statements, when in fact there were such employee statements. Muhammad contends that these statements contained exculpatory information regarding his mental state at the time of the offense, and that he was denied his right to effectively cross-examine witnesses against him based on the statements. Because the trial court believed that this point was inappropriate *490 to a rule 3.850 proceeding, it did not address the merits of whether the alleged Brady violation would require a new trial. Accordingly, we reverse the trial court's ruling on the alleged Brady violation and remand to the trial court for an evidentiary hearing on this issue.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Muhammad has combined and rearranged many of the claims which he presented to the trial court. He does not seek review of his claim that the trial court failed to apply the law of the case and collateral estoppel principles.
[2] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[3] Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).
[4] 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).